UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NICHOLE PAULAUSKY,

        Plaintiff,

v.

**MEMORANDUM OF LAW AND ORDER GRANTING MOTION FOR PARTIAL DISMISSAL**
Civil File No. 25-00165 (MJD/DLM)

MAYO CLINIC,

        Defendant.

Celeste E. Culberth and Leslie L. Lienemann, Culberth & Lienemann, LLP, Counsel for Plaintiff.

Emily A. McNee and Leslie A. Bellwood, Littler Mendelson, P.C., Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Mayo Clinic's ("Mayo") Motion for Partial Dismissal of Plaintiff Nichole Paulausky's Complaint.

## II.    BACKGROUND

The following facts are relevant to Mayo's motion to dismiss. For purposes of this motion, the Court takes all facts alleged in the Complaint as true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (addressing Fed. R. Civ. P. 12(b)(6) motion); Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 914 (8th Cir. 2015) (noting that in a facial attack to jurisdiction under Fed. R. Civ. P.

1

12(b)(1), the court must "see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction") (citation omitted).

### A. Paulausky's Employment History with Mayo

Plaintiff Nichole Paulausky has been employed by Mayo since August 2021 as a Health Information Services Specialist and remains employed in that position. (Compl. ¶ 11.) She works remotely from home. (Id. ¶ 12.) "Paulausky's job requires her to review and categorize documents in Mayo's electronic medical records system. She is required to utilize a variety of electronic applications and systems to place documents correctly into patients' charts." (Id.) Paulausky has "multiple disabilities." (Id. ¶ 10.)

During her employment with Mayo, Paulausky has resided in Illinois and Tennessee. (Id. ¶ 6; Doc. 11-1 (Pl. EEOC filing) at 1.)

Defendant Mayo is a non-profit corporation with a registered address in Rochester, Minnesota. (Compl. ¶ 7.)

### B. Paulausky's Requests for Accommodations

Paulausky alleges that due to job requirements, in September 2021, she noticed a decline in her health that led to work absences. (Id. ¶ 13.) On or about September 22, 2021, Paulausky contacted Human Resources ("HR") to request reasonable accommodations for her disabilities, was told she did not qualify for

leave under the Family and Medical Leave Act ("FMLA"), but was told she could request intermittent leave as a reasonable accommodation. (Id. ¶ 14.)

On or about October 22, 2021, Paulausky met with her leadership team and an HR representative regarding possible accommodations for pain she experienced from sitting in one position too long while working. (Id. ¶ 15.) The management team denied Paulausky's request for intermittent leave and for a laptop computer, but told Paulausky she could take an unpaid leave of absence or reduce her hours. (Id.)

On or about July 15, 2022, Paulausky again contacted HR with accommodation requests related to health issues because of Mayo's alleged failure to accommodate her disabilities. (Id. ¶¶ 20-21.)

Not only was Paulausky's July 2022 accommodation request denied, but other requests for accommodations were denied or not properly granted (i.e., delivering a sit/stand desk to her home that required assembly, which Paulausky was unable to do). (Id. ¶¶ 22-26.) In December 2022, Paulausky discovered she was being paid less than minimum hourly wage for her position. (Id. ¶ 27.)

### C. Paulausky's EEOC Claim

On December 15, 2022, Paulausky filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") that was cross-filed with the Minnesota Department of Human Rights ("MDHR"). (Id. ¶ 28; Doc. 11-1.)

On October 7, 2024, the EEOC determined that Mayo discriminated against Paulausky in violation of the Americans with Disabilities Act ("the ADA") when it denied Paulausky reasonable accommodations. (Compl. ¶ 32.) On October 22, 2024, the EEOC issued Paulausky a right to sue letter. (Id. ¶ 33.)

### D. Paulausky's Claims

Paulausky filed this lawsuit on January 14, 2025. She asserts six Counts against Mayo: (1) Disability Discrimination under the Minnesota Human Rights Act ("MHRA"); (2) Failure to Accommodate Disability under the MHRA; (3) Disability Discrimination under the ADA; (4) Failure to Accommodate Disability under the ADA; (5) Reprisal under the MHRA; and (6) Retaliation under the ADA.

## III. DISCUSSION

Mayo seeks to dismiss Paulausky's MHRA claims (Counts 1, 2, and 5) "and allegations that are time barred" under the ADA and MHRA. (Doc. 8 at 1.)

A.   **Legal Standards for a Motion to Dismiss**

1.   **Federal Rule of Civil Procedure 12(b)(1) Standard for Motions to Dismiss for Lack of Subject Matter Jurisdiction**

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). "Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion." Id.

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn, 918 F.2d at 729 n.6). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (citations omitted); Zarling v. Abbott Lab'ys, No. CV 21-23 (MJD/BRT), 2021 WL 2551438, at *4 (D. Minn. June 22, 2021).

When addressing a Rule 12(b)(1) motion, the Court can, without converting the motion into one for summary judgment, "make credibility determinations and [] weigh conflicting evidence in resolving the motion." T.L.

5

ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006), abrogated on other grounds by United States v. Kwai Fun Wong, 575 U.S. 402 (2015).

### 2. Federal Rule of Civil Procedure 12(b)(6) Standard for Motions to Dismiss for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz, 601 F.3d at 848.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations and quotations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

### 3. Whether Paulausky is an "Employee" Under the MHRA

The MHRA protects employees from workplace discrimination. See Minn. Stat. § 363A.02. Under the MHRA, an employee is "an individual who is employed by an employer and who resides or works in this state." Id. § 363A.03, subd. 15 (emphasis added).

It is undisputed that Paulausky is employed by Mayo. It is also undisputed that Paulausky has never resided in Minnesota. Therefore, to be covered under the MHRA, Paulausky must show that she "works in this state" as defined by the statute. See id.

#### a) The "Works in this State" Requirement

At the time the parties were briefing the motion, this issue was, arguably, in some dispute. (See Docs. 10 (Def. Mem. in Supp. of Mot. to Dismiss) at 8-14; 18 (Pl. Mem. in Opp. to Mot. to Dismiss) at 7-9.) In fact, both parties asked the Court to hold the motion in abeyance while the Eighth Circuit decided Kuklenski v. Medtronic USA, Inc., 134 F.4th 528 (8th Cir. 2025), which was released prior to Mayo filing its reply brief in this matter. Kuklenski affirmed the District Court decision that a remote employee cannot satisfy the "works in" requirement with only non-physical-presence contacts with the state and must have a physical

7

presence in Minnesota to be covered by the protections of the MHRA.  134 F.4th at 533.

In Kuklenski, an employee of Medtronic, a Minnesota-based company, worked remotely from Michigan, California, and Illinois.  Kuklenski v. Medtronic USA, Inc., 702 F. Supp. 3d 783, 790 (D. Minn. 2023).  She argued that her supervisor's location in Minnesota and her frequent video conference, telephone, and email contacts with Medtronic's Minnesota employees afforded her the protections of the MHRA, despite not having traveled to Minnesota for work from February 2020 to December 2021, when she was fired.  Id. at 790-91.

The Eighth Circuit disagreed and held that one who "works in" Minnesota performs "the labor, task, or duty of employment within the limits, bounds, or area of the state."  Kuklenski, 134 F.4th at 532 (cleaned up).  The court found that statutory context supported this reading.  Id. (holding that "reading 'works in' alongside the parallel phrase 'resides . . . in' supports interpreting 'works in this state' to also require physical presence in Minnesota") (ellipses in original).  Although the court acknowledged that the MHRA "shall be construed liberally for the accomplishment of the [statute's] purposes," it also stated that the MHRA contains "the express statement" that "'[i]t is the public policy of this state to

8

secure for <u>persons in this state</u>, freedom from discrimination,' because '[s]uch discrimination threatens the rights and privileges of the <u>inhabitants of this state</u>.'" <u>Id.</u> (quoting Minn. Stat. §§ 363A.04; 363A.02, subd. 1(a), (b)) (emphasis and brackets in original).

The court held that because the plaintiff had not even traveled to Minnesota for business from February 2020 until her termination in December 2021, she had not established a physical presence in Minnesota and therefore, could not satisfy the "works in" requirement by pointing to only "non-physical-presence contacts with the state." <u>Id.</u> at 533.

### b) Paulausky's Arguments

Paulausky asserts that it is an employee's work, rather than the employee's physical residence, that determines whether someone is an "employee" under the MHRA. (Doc. 18 at 6.) At the time she submitted her brief, <u>Kuklenski</u> was pending before the Eighth Circuit. (<u>Id.</u> at 7.) Paulausky asked the Court to either deny Mayo's motion on this basis or suspend ruling pending the Eighth Circuit's decision because the plaintiff in <u>Kuklenski</u> had asked the Eighth Circuit to certify to the Minnesota Supreme Court the question of how to define "employee"

under the MHRA. (Id.) The Eighth Circuit declined to do so. Kuklenski, 134 F.4th at 534.

Paulausky argues that because she accesses electronic medical records that are located in Minnesota and works exclusively within Mayo Clinic's record system, she is different from an employee who merely travels to sell merchandise, sells merchandise from home, or "builds widgets" at home. (Doc. 18 at 7-8.) Paulausky further notes that under the FMLA, an employee's "worksite" is "the office to which an employee reports and from which assignments are made." (Id. at 8 (citing 29 C.F.R. § 825.111).)

Paulausky relies on Wilson v. CFMOTO Powersports, Inc., in which the court held that the Kentucky-based plaintiff worked in Minnesota for purposes of the MHRA because he had daily phone and email communications with his Minnesota employer, was required to attend trainings and meetings in Minnesota, and the discrimination at issue occurred in Minnesota. No. CV 15-3192 (JRT/JJK), 2016 WL 912182, at *2, *6 (D. Minn. Mar. 7, 2016). Likewise, the plaintiff in Lapushner v. Admedus Ltd., a New Jersey resident, worked in Minnesota when "she attended trainings and business meetings in Minnesota, communicated with management located in Minnesota, and suffered alleged

10

harassment and discrimination in Minnesota" by defendant's employees who worked primarily in Minnesota. No. CV 20-572 ADM/TNL, 2020 WL 5106818, at *5 (D. Minn. Aug. 31, 2020).

### c) Analysis

Because Paulausky neither worked nor resided in Minnesota during the relevant time period, her MHRA claims must be dismissed for lack of subject matter jurisdiction. States do not "acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected. . . ." Bigelow v. Virginia, 421 U.S. 809, 824 (1975). To that end, a "general presumption exists against the extra-territorial application of a state's statutes." Longaker v. Boston Sci. Corp., 872 F. Supp. 2d 816, 819 (D. Minn. 2012), aff'd, 715 F.3d 658 (8th Cir. 2013). Accordingly, Paulausky has no standing under the MHRA.

Even before the Eighth Circuit decided Kuklenski, the majority of courts to address this issue concurred with its holding. See id. at 820 (dismissing MHRA claim because plaintiff neither lived nor worked in Minnesota and therefore lacked standing to assert claim under the MHRA) (citing Harrington v. Nw. Airlines, Inc., No. A03–192, 2003 WL 22016032, at *2 n.1 (Minn. Ct. App. Aug. 26,

11

2003) (noting district court's refusal to apply the MHRA to out-of-state persons)); see, also, e.g., MacNab v. Fortis, Inc., No. 01-1810, 2002 WL 534885, at *2 (D. Minn. Apr. 5, 2002) (holding that because plaintiff was not Minnesota resident, she could not avail herself of the MHRA's protections); In re St. Paul & K.C. Grain Co., 94 N.W. 218, 225 (Minn. 1903) ("It is an elementary rule that statutory law has no extraterritorial effect.").

The cases relied on by Paulausky are factually distinguishable from the case at bar in at least two ways: 1) unlike the plaintiffs in Wilson and Lapushner, who attended trainings and work meetings in Minnesota, there is no indication Paulausky ever spent time in Minnesota for any purpose and 2) unlike the plaintiffs in Wilson and Lapushner, who suffered discrimination in Minnesota, Paulausky's alleged injuries occurred in her own out-of-state home.

Finally, Kuklenski reiterated that the court's focus is the statutory text and the type of physical presence a plaintiff has with the state, not, as Paulausky argues, the non-physical-contacts a plaintiff has with the state. Here, because Paulausky has had no physical presence in Minnesota, she cannot satisfy the "works in" requirement by pointing to only "non-physical-presence contacts

with the state." Id. at 533.  Thus, Paulausky lacks standing under Federal Rule of Civil Procedure 12(b)(1) and her MHRA claims will be dismissed on this basis.

### 4. Whether Paulausky's Claims are Time-Barred

#### a) Timing of MHRA Claims

To file a valid MHRA claim, a plaintiff must either file an administrative charge with the MDHR or initiate a civil action within 365 days after the occurrence of an allegedly discriminatory act.  Minn. Stat. § 363A.28 subdiv. 3.  For purposes of determining the running of the 365-day period, "the first application of an unfair discriminatory practice, employment policy, or seniority system to a new person establishes a basis for the filing of a claim by that person."  Id. subdiv. 4.  Minnesota courts strictly interpret the limitations periods prescribed by the MHRA.  See Bougie v. Sibley Manor, Inc., 504 N.W.2d 493, 497-98 (Minn. Ct. App. 1993) (remanding for specific findings on dates of alleged harassment and determination of whether complaint was time barred).

Moreover, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Therefore, "a denial of

13

a request for accommodation constitutes a discrete act and is not part of a continuing violation." Radcliffe v. Securian Fin. Grp., Inc., 906 F. Supp. 2d 874, 888 (D. Minn. 2012) (citations omitted).

"As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (citation omitted); Raymond v. Bd. of Regents of the Univ. of Minn., 847 F.3d 585, 589 (8th Cir. 2017) ("[I]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6).") (quoting C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012)).

Here, Paulausky filed a complaint with the EEOC on December 15, 2022 that was cross-filed with the MDHR. Thus, the 365-day period for allegations ended December 15, 2021. However, the Complaint contains allegations related to denial of accommodations prior to that date.

The MHRA is clear that for purposes of determining the running of the 365-day period, the first application of an unfair discriminatory practice

14

establishes a basis for the filing of a claim. Minn. Stat. § 363A.28 subdiv. 4. There is no "continuing discrimination" or "ongoing discrimination" exception.

Thus, in addition to the lack of jurisdiction, any MHRA claims for failure to accommodate prior to December 15, 2021 are time barred and must be dismissed on this basis because Paulausky did not file an administrative charge with the MDHR or initiate a civil action within 365 days after the occurrence of an allegedly discriminatory act prior to that date. See id. subdiv. 3.

Moreover, each allegedly discriminatory act must be considered as separate from every other act. Therefore, to the extent Paulausky argues that Mayo's failure to accommodate is a continuing violation and thus all denials are merely part of that continuing violation, that argument fails. Any claims made by Paulausky based on allegations prior to December 15, 2021 are time-barred under the MHRA and will be dismissed with prejudice.[1] (See Compl. ¶¶ 13-15 (discussing Mayo's failure to accommodate Paulausky's disabilities during September and October 2021)); Joyce, 635 F.3d at 367.

---

[1] One of these claims is an October 22, 2021 claim that Paulausky was denied a laptop. (Compl. ¶ 15.) In Paragraph 17 of the Complaint, Paulausky alleges that Mayo "continues to deny [her] request for a laptop." The claim in Paragraph 17 is not time-barred as it refers to the date Paulausky filed her claim with the Court: January 14, 2025.

### b) Timing of ADA Claims

The same procedures used to initiate a claim under Title VII are used to initiate a claim under the ADA. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 285 (2002) ("Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability."); Lindeman v. Saint Luke's Hosp. of Kansas City, 899 F.3d 603, 608 (8th Cir. 2018) (same). To initiate a discrimination claim under Title VII, a plaintiff must file a timely discrimination charge with the EEOC and receive a right-to-sue letter. Stuart v. General Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000). Allegations not timely exhausted are subject to dismissal. See Wallin v. Minn. Dep't of Corrs., 153 F.3d 681, 688-89 (8th Cir. 1998) (dismissing retaliation claim not alleged in EEOC charge). Under the ADA, to be timely, a charge of discrimination—including a failure to accommodate charge—must be filed within 300 days of the alleged discrimination. Henderson v. Ford Motor Co., 403 F.3d 1026, 1032 (8th Cir. 2005) (citing 42 U.S.C. § 12117) (applying 300–day statute of limitations from 42 U.S.C. 2000e–5(e) to ADA claims).

Paulausky filed her EEOC charge on December 15, 2022. Thus, any alleged acts of discrimination must have occurred between February 18 and December 15, 2022 to have been timely exhausted in the 300-day window before Paulausky filed her EEOC charge. However, the Complaint encompasses allegations of discrimination that occurred prior to February 18, 2022. (See Compl. ¶¶ 13-15.)

Paulausky asserts that her ADA claims are timely because her "Complaint alleges that [Mayo's] denial of reasonable accommodation were repeated and continued as of the date of the Complaint." (Doc. 18 at 9.) Paulausky argues that "[s]ome courts have held that the denial of a reasonable accommodation can be a discrete act from which a statute of limitation begins to accrue" and that "when a plaintiff makes renewed requests for accommodation within the statutory periods, the claim is timely." (Id. at 9-10 (citing Teague v. Nw. Mem. Hosp., 492 Fed. App'x. 680 (7th Cir. 2012) (employee on leave due to inability to work could not claim denial of accommodation was a continuing violation); Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130-35 (1st Cir. 2009) (employer's rejection of specific renewed requests for accommodation were discrete acts of discrimination within the statute of limitation)).)

Here, Paulausky's 300-day window to file a claim under the ADA began on February 18, 2022. Therefore, unless Paulausky can cite an exception, any claim from before that date is untimely. Tobin, a case relied on by Paulausky, makes it clear that in situations exactly like hers, discrete acts that occurred more than 300 days prior to filing an EEOC claim are time barred:

> A party alleging employment discrimination may, in appropriate circumstances, file suit based on events that fall outside the applicable statutes of limitation. Under the "continuing violation" doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period. However, it is now well established that the doctrine does not apply to "discrete acts" of alleged discrimination that occur on a particular day, but only to discriminatory conduct that takes place over a series of days or perhaps years.
>
> . . .
>
> The classic example of a continuing violation is a hostile work environment, which is composed of a series of separate acts that collectively constitute one unlawful employment practice. The continuing violation doctrine applies in that setting because hostile work environment claims by their very nature involve repeated conduct and a single act of harassment may not be actionable on its own. Thus, component acts of a hostile work environment claim that occur outside the filing period may be considered for purposes of determining liability.
>
> By contrast, the denial of a disabled employee's request for accommodation starts the clock running on the day it occurs. As we have noted, such a denial is a discrete discriminatory act that, like a termination, a refusal to transfer, or a failure to promote, does not require repeated conduct to establish an actionable claim.

Tobin, 553 F.3d at 130–31 (citations and quotations omitted).

Accordingly, as with her MHRA claims, Paulausky's ADA claims based on discreet acts of September and October 2021 are untimely and will be dismissed with prejudice.  See Joyce, 635 F.3d at 367.

### B.   Conclusion

Paulausky's MHRA claims fail because she only points to "non-physical-presence contacts with the state," which do not satisfy the "works in" requirement of the MHRA.  Kuklenski, 134 F.4th at 533.  The MHRA claims will be dismissed for lack of standing under Fed. R. Civ. P. 1(b)(1).  Defendant Mayo Clinic's Partial Motion to Dismiss will be granted as to Counts 1, 2, and 5 of the Complaint.  Paragraphs 34-43 and 53-58 of the Complaint will be stricken.

Moreover, any MHRA claims based on allegations prior to December 15, 2021 are time barred and will be dismissed with prejudice.  (See Compl. ¶¶ 13-15.)  Likewise, Paulausky's ADA claims based on allegations prior to February 18, 2022 are time-barred and will be dismissed with prejudice.  (See id.)  Accordingly, paragraphs 13-15 of the Complaint will also be stricken.

### IV.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Mayo Clinic's Motion for Partial Dismissal of Plaintiff Nichole Paulausky's Complaint **[Doc. 8]** is **GRANTED**;

2. Counts 1, 2, and 5 of the Complaint are **DISMISSED**;

    a) Any MHRA claims based on allegations prior to December 15, 2021 are **DISMISSED with prejudice**;

    b) Any MHRA claims based on allegations after December 15, 2021 are **DISMISSED without prejudice**;

3. Any ADA claims based on allegations prior to February 18, 2022 are **DISMISSED with prejudice**;

4. Paragraphs 13-15, 34-43, and 53-58 are **STRICKEN from the Complaint**; and

5. Within 21 days from the date of this Order, Plaintiff Nichole Paulausky shall file an Amended Complaint that complies with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 1, 2025                              s/Michael J. Davis
                                                    Michael J. Davis
                                                    United States District Court